UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)
Case No. 06-20046 CIV-HUNT

JEFF ALEXANDER and JERRY
FREDRICKSON, individually, and
in their representative capacity for all
those similarly situated,

        Plaintiffs,

v.

THE FLORIDA BAR,

        Defendant.
_____/



## NOTICE OF SUPPLEMENTAL AUTHORITY AS TO PUBLIC ADMISSIONS OF CHAIR OF THE FLORIDA BAR CLIENT SECURITY FUND

Plaintiffs Jeff Alexander and Jerry Fredrickson, individually, and in their representative capacity for all those similarly situated, hereby file this Notice of Supplemental Authority as to Public Admissions of the Chair of the Florida Bar Client Security Fund, and state as follows:

This action was brought against the Florida Bar for violating the constitutional rights of Plaintiffs by summarily denying their claims against the Florida Bar's Client Security Fund. In the Complaint, Plaintiffs argue that the denial of their claims was arbitrary and in violation of their due process and equal protection rights under both the Florida and United States Constitutions. With their Motion to Dismiss the Complaint (the "Motion to Dismiss") [D.E. 11] the Florida Bar argues that the denial of Plaintiffs' claims did not violate Plaintiffs' constitutional rights because the Florida Bar supposedly had three "rational bases" for doing so.

> First, Plaintiffs never applied for relief under the procedures set out by the fund. . . Second, Plaintiffs have not exhausted any recovery available against Robles or other sources besides the CSF. . . . Third, payment of benefits to Plaintiffs of those similarly situated would exhaust the fund several times over.

Motion to Dismiss at pp. 19-20 (citations omitted). The attached article from the June 27, 2006 issue of the Daily Business Review (the "Article") bears directly on this argument by the Florida Bar. Specifically, the Article contains quotations from Irwin R. Gilbert, Esq., the Chair of The Florida Bar's Client Security Fund, in which he asserts that Plaintiffs' counsel's argument supporting Plaintiffs' claim against the Florida Bar "reveals a misunderstanding of the role that the Bar plays. . . He speaks as though this was an absolute obligation as compared to some kind of moral imperative." According to the Article, "Gilbert said the purpose of the fund is for the legal community to contribute to helping victims of lawyer fraud, but that the legal community *is not obligated to repay anything*" (emphasis added). The Article further quotes Mr. Gilbert as follows:

> "We recognize that some individuals have been injured because of isolated bad acts, and we choose to do what is within our power to make them whole," Gilbert said. He added that when the fund can't make people whole again, the goal is "to repair part of the damage." He said it's one way the lawyers serve the community, *"as a matter of grace."*

(emphasis added). These statements by Mr. Gilbert, again the *Chair* of The Florida Bar's Client Security Fund, obviously fly in the face of their "rational bases" argument. First, Mr. Gilbert admits that, in reality, the three supposedly rational bases offered for rejecting Plaintiffs' claims against the Client Security Fund have nothing whatsoever to do with the real reason the Florida Bar turned down Plaintiffs' claims. According to Mr. Gilbert, the Florida Bar was justified in denying Plaintiffs' claims because it "is not obligated to pay anything" and any payment that it does makes is "as a matter of grace." More importantly, this reason, the apparent *real reason* Plaintiffs' claims against the Client Security Fund were denied, is patently illegal as it denies Plaintiffs their due process and equal protection rights under both the Florida and United States Constitutions.

2

As a result of the certain highly relevant admissions made in the Article by the Chair of the Florida Bar's Client Security Fund, Plaintiffs hereby submit the Article as authority for their opposition to the Motion to Dismiss.

Respectfully Submitted,

TEW CARDENAS LLP
Attorneys for Plaintiffs
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131-4336
(305) 536-1112
tt@tewlaw.com
gg@tewlaw.com

By: _____
C. Thomas Tew, PA
Florida Bar No. 098160
Guy F. Giberson
Florida Bar No. 627402

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served *via* U.S. Mail this 29th day of June, 2006, upon: Steven E. Chaykin, Esq., Jennifer Coberly, Esq., and Walter J. Tache, of **Zuckerman Spaeder, LLP**, Miami Center, 201 South Biscayne Boulevard, Miami, Florida 33131, attorneys for The Florida Bar.

TEW CARDENAS LLP

By: _____
Guy F. Giberson

{@PFDesktop\ ODMA/MHODMA/DMS_NT.Miami;465209;1

- Law.com Home  • Newswire  • LawJobs  • CLE Center  • LawCatalog  • Our Sites  • Advertise

Search

News St

| Home | Court Info. | Products/Services | Leads /Notices | Advertise | Subscribe |

**Business**
- Business Stories
- Leads and Notices
- Events Calendar
- People on the Move

**Legal**
- Legal Stories
- Court Info.
- Events Calendar
- People on the Move
- Law Student Page
- Legal Links
- Public Notice Forms
- CLE Online
- Court Reporter Search
- Legal Dictionary

**Advertise**
- Advertise Online
- Classified
- Law Firm Marketing
- Media Kit
- Current Promotions

**Products/Services**
- Buy Business Leads
- Buy Directories/Listings
- Corporate Kits
- Reprints

**About Us**
- Our Company
- Employment Opportunities
- Editor's Page
- Newsstand Locations

martindale.com
Lawyer Locator
Last name.
First name
State/Province
SEARCH
Martindale-Hubbell

June 29, 2006

Reprints & Permissions  Printable Version

## Attorney Discipline
### Probate lawyer disbarred

June 27, 2006                                                    By: Carl Jones

The Florida Supreme Court recently disbarred a Coconut Grove probate attorney prominent in the black community who allegedly stole millions from trust accounts belonging mostly to black clients.

Mark Valentine admitted to misusing trust funds in January and was disbarred in April.

In its petition last October seeking Valentine's emergency suspension, The Florida Bar alleged that Valentine stole at least $2 million from estates he represented. He allegedly used some of the stolen money to replace money from other estates that he had raided earlier.

Valentine "has misappropriated millions of dollars from at least 2001 to the present predominately from estates and guardianships," the Bar said in its 2005 petition to the Supreme Court.

Valentine was suspended by the Supreme Court on an emergency basis in mid-October. The Supreme Court also has ordered him to pay restitution. The Miami-Dade state attorney's office is investigating the case, according to a representative for the agency.

In a pending legal malpractice lawsuit in Miami-Dade Circuit Court, one woman's estate claims that Valentine robbed it of between $600,000 and $1 million. Bar investigators said several other former Valentine clients were robbed of about $450,000 each. More civil suits against Valentine are likely.

Valentine promised in his plea deal with the Bar not to try to discharge the debt through bankruptcy. Valentine's attorney in the disbarment proceedings, Roderick Vereen, did not return a phone call before deadline Monday.

The value of Valentine's assets is unclear.

Given the scope of Valentine's alleged fraud, it's unclear whether his alleged victims will ever be able to recover their losses from the Bar's Client Security Fund. The case comes at the same time that an attorney who represents former clients of disbarred Miami mass torts lawyer Louis Robles is pressing the Bar to pay out $13.5 million to Robles' former clients. The two cases raise issues about the adequacy of the Bar's Client Security Fund for compensating victims of large-scale attorney fraud.

The Client Security Fund is supported by $20 from every Florida Bar member's annual dues. It currently has about $3 million in its account, with another $500,000 held in reserve. It's designed to at least partially compensate clients who have been

You Deserve The Best

EXCEPTIONAL DOCTORS
EXCEPTIONAL CARE
EXCEPTIONAL RESULTS

• Annual executive-level physical
• Same-day, on-time appointments
• 24/7 doctor availability

CALL 800.873.0097
FOR A PRIVATE CONSULTATION

MIAMI-DADE COUNTY
BROWARD COUNTY
PALM BEACH COUNTY

www.MDVIP.com

Click here for more information

Exhibit A

Ads by Goooooogle

**Legal Resources**
Free Legal Forms!
Ask a question about the law, we have the answer.
www.Lawinfo.com

**Best US Legal Search Firm**
Major, Lindsey & Africa where top lawyers find 100's of quality jobs
mlaglobal.com

**Legal Jobs**
Job listings for Attorney, Legal Secretary and Paralegals
www.iHireLegal.com

**CA Estate Planning Law**
Learn Your Legal Rights. Call Now! Free Consultation.
877-893-7530
www.caestateplanninglaw

Advertise on this site

→ SUBSCRIBE NOW
→ RENEW SUBSCRIPTION

SPONSOR THIS PAGE
ONLINE OPPORTUNITIES




defrauded by Florida Bar members.

But paying back victims of major frauds, like the ones Valentine and Robles are accused of, could wipe out the Bar fund, Bar leaders acknowledge.

**Bar ordered audit**

Valentine was a founding member of the 100 Black Men of South Florida and a member of the Wilkie D. Ferguson Jr. Bar Association, Miami-Dade's black bar group.

Valentine's attorney in the disbarment proceedings, Vereen, is the president-elect of the Ferguson bar group.

"I know Mark, and I'm sad that he's being disbarred," said Walter J. Harvey, the immediate past president of the Ferguson bar group. "If he did steal funds, that's really bad."

Bar investigators alleged that Valentine used the money he stole for personal debts, including credit card debt, and then tried to replace the missing money with new funds deposited in his trust account.

The impetus for the proceedings against Valentine, first reported by the Miami New Times earlier this month, came from a June 2005 complaint filed by Miami Gardens resident Helena Roundtree.

According to Bar records, Roundtree said she had retained Valentine to handle the estate work of the late Cornelius Carter, and the guardianship for Carter's son. Valentine liquidated three properties owned by Carter in 2001 and 2002, netting about $30,000. Valentine paid $10,000 to Roundtree. But she was unable to collect the rest.

Last July, after Roundtree had filed her complaint, Valentine sent her the remaining $20,000. Bar investigators are not sure where he obtained that $20,000. Roundtree has said that the three properties were worth at least $200,000.

Following Roundtree's complaint, the Bar commissioned an audit of Valentine's bank records, which was conducted by Carlos J. Ruga. The Bar said it subpoenaed Valentine's financial records and, even though he had several hundred clients, he produced records for only 11 clients. The Bar then analyzed Valentine's bank records from 2001 through July 2005.

Among other things, Ruga discovered an October 2001 deposit of more than $1 million into Valentine's trust account, payable from the estate of Louise Dargans-Fleming. The Bar claimed that Valentine used $700,000 of that money within six weeks to repay other guardianships and estates that he had siphoned money from. Ruga only investigated a small number of the cases and said he was clearly disturbed at the size of the fraud.

By April 2002, the Bar alleged, Valentine stole the rest of Dargans-Fleming's money, including making a $164,000 withdrawal, from which $55,000 went to pay his personal credit card bills.

Maureen Kennon, a Boca Raton lawyer who represents the estate of Dargans-Fleming, said her client is pursuing a legal malpractice claim in Miami-Dade Circuit Court against Valentine. The actual amount of the loss has not been determined but is estimated at about $600,000.

Kennon said the money from Dargans-Fleming's estate is badly needed for the care of her nephew, who suffered serious brain damage. The money in the estate was supposed to pay for his medical needs. "Obviously that's in jeopardy here," Kennon said.

**Bar not obligated to pay**

So far, only three other former Valentine clients have contacted the Bar about Valentine's conduct, according to the Bar's discipline file. One former client was told she had waited too long to complain about Valentine's handling of a guardianship issue. Two others were told they can make a Client Security Fund claim but not a Bar ethics complaint because Valentine already was disbarred.

If there are indeed hundreds of clients, and millions in stolen funds, the former Valentine clients will only be able to recover a token amount from the Bar's Client Security Fund. The Bar requires that clients first exhaust other remedies, such as filing civil suits, for recovering lost money. The fund limits a client's claim to $50,000, though there is discussion of raising that cap.

John Anthony Boggs, director of the Bar's legal division, said most of the $3 million allocated for the fund this year is "spoken for." But the Bar board of governors most likely would not approve any claims from former Valentine clients until next year, when the fund is replenished with new Bar dues from members.

Thomas Tew, who represents clients who lost money to disbarred lawyer Louis Robles, has urged the Bar to impose a one-time $178 special assessment on Bar members to increase the money in the fund. He particularly wants the fund to cover the $13.5 million allegedly owed to Robles' former clients.

But Irwin Gilbert, chair of the Client Security Fund Committee, said in an interview that Bar members won't support that.

"Mr. Tew's demand reveals a misunderstanding of the role that the Bar plays," Gilbert said "He speaks as though this was an absolute obligation as compared to some kind of moral imperative."

Gilbert said the purpose of the fund is for the legal community to contribute to helping victims of lawyer fraud, but that the legal community is not obligated to repay anything.

"We recognize that some individuals have been injured because of isolated bad acts, and we choose to do what is within our power to make them whole," Gilbert said. He added that when the fund can't make people whole again, the goal is "to repair part of the damage." He said it's one way that lawyers serve the community, "as a matter of grace."

But in an interview, Tew disagreed. "That's not my understanding of the fund, and that's not my understanding of the spirit of the fund," he said.

Gilbert said clients should take responsibility for managing their own cases better and scrutinizing their lawyers' actions, so funds don't get lost or misappropriated in the first place. "A lot of these losses can be prevented if the clients can be alert and they can respond when the lawyers aren't doing their jobs," he said. "They could avoid becoming victims. Then we all win."

But Kennon said that's not realistic. "You're never, ever going to be able to educate the public on stuff like this," she said. In her view, the solution is to tighten the rules under which lawyers handle trust funds, making it harder for them to steal.

*Carl Jones can be reached at cjones@alm.com or at (305) 347-6648.*

**Back To:**

- Today's top stories.
- More business stories.
- More legal stories.

ALM Media, Inc. takes copyright infringement seriously. YOU MAY NOT DISTRIBUTE THIS STORY, ELECTRONIC OR OTHERWISE, WITHOUT OUR PERMISSION. You may print or purchase this story from our archives for your personal use only. In order to obtain reprint permission rights, please contact Sue Viera at 305-347-6621 or 800-777-7300 ext. 6621. If you need a subscription, please call 1--877-347-6682.

Home | Business Stories | Legal Stories | Court Info. | Products/Services
Leads/Notices | Advertise | Subscribe | About Us | Privacy Statement | Site Directory

http://www.dailybusinessreview.com/news.html?news_id=39293                          6/29/2006