UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JEFF ALEXANDER and JERRY
FREDRICKSON, Individually, and in
their representative capacity for all those
similarly situated,

        Plaintiffs,

v.                    CASE NO. 06-20046-CIV-HUNT

THE FLORIDA BAR,

        Defendant.

## **ORDER**

This matter is before the Court on Defendant's Motion to Dismiss [20]. For the reasons stated below, the motion is GRANTED.

## **I. BACKGROUND**

Plaintiffs filed the pending class action complaint on January 10, 2006, against the Florida Bar (hereinafter "Defendant" or "the Bar") challenging the denial of certain claims filed with the Bar's Clients' Security Fund (hereinafter "CSF") based on the misconduct of Louis S. Robles ("Robles"), a now disbarred Florida attorney, and his law firm, Louis S. Robles P.A. (the "Robles Asbestos Firm"). Robles also practiced through the Robles Law Center, P.A., a personal injury firm, although this case only involves clients of the Robles Asbestos Firm.

Plaintiffs are victims of asbestos exposure who were represented by the Robles Asbestos Firm in lawsuits against manufacturers and others connected to their asbestos exposure. Plaintiffs contend that Robles stole millions of dollars from over 4,000 asbestos clients. Specifically, Plaintiffs allege that after settling thousands of asbestos cases, Robles absconded with the settlement payments rather than forward the funds to his clients. After an onslaught of complaints (starting in 1998) to the Bar, Robles was disbarred in May of 2003 for misappropriating client funds from his trust accounts. The Bar also appointed an "Inventory Attorney," Thomas Tew (presently Plaintiffs' counsel) to review Robles' files and protect the interests of Robles' clients. Tew's investigation revealed a pattern of theft from 1992-2003 totaling more than $13 million dollars. According to Plaintiffs, Robles has not been prosecuted by any federal or state agency for his conduct.

Tew filed a claim by letter dated June 16, 2003,[1] with the CSF on behalf of all of the victims; however, it is undisputed that Tew did not file the required forms or provide the required information. The Bar, a mandatory self-regulating organization, created the CSF in 1967 to provide individuals with a source of compensation for an attorney's misappropriation or embezzlement of their money or property. According

---

[1] Tew's appointment as Inventory Attorney provided him with the opportunity to accept employment as a personal attorney for matters discovered in his investigation, but the decision whether to employ him for such purpose resided with the clients. The Bar represents that Tew submitted the letter claim on behalf of all of Robles' clients, even though he admittedly was not authorized to represent all of those individuals.

to Plaintiffs, the Bar responded that the claims could not be processed because the claimants had not exhausted their efforts to recover from Robles personally. Plaintiffs allege that the Bar repeatedly pays victims eligible for relief through the CSF and then pursues reimbursement from the offending attorney consistent with the Bar's subrogation rights.

Robles filed for bankruptcy on December 24, 2003, and both of his law firms followed suit on July 14, 2004. Upon motion of Tew, as the Inventory Attorney, the Bankruptcy Court ordered the trustee to accept an "omnibus claim" in the bankruptcy proceeding, resulting in a Proof of Claim filed by the trustee with the bankruptcy court on behalf of the victims that established the amount of each claim against Robles and the Robles Asbestos Firm.

Tew thereafter sent another demand letter to the Bar on December 15, 2005, seeking to have the CSF pay the claims and updating the Bar about the developments in the bankruptcy proceedings.[2]  The Bar acknowledged receiving the letter on January 5, 2006. Plaintiffs, on behalf of themselves and all those similarly situated, filed the pending lawsuit less than a week later on January 10, 2006, seeking two declaratory judgments: (1) that by denying Plaintiffs' claims with the CSF, the Bar violated both the Florida due process clause by depriving Plaintiffs of property without due process of law and the Florida equal protection clause by treating them

---

[2] Defendant reiterates that Tew was still not authorized to represent all of the Robles clients when he sent this second demand letter.

3

differently from other similarly situated individuals; and (2) that the Bar also denied Plaintiffs their due process and equal protection rights under the Fourteenth Amendment of the United States Constitution by summarily rejecting their claims. Plaintiffs demand the payment of their claims in addition to recovering all associated costs and attorneys' fees, and, if necessary, seek an order compelling the Bar to specially assess its members.

Defendant moves the Court to dismiss the pending complaint with prejudice pursuant to Federal Rules of Civil Procedure 12, arguing that: (1) no case or controversy exists; (2) the claims are barred by sovereign immunity; and (3) the claims fail to state a claim upon which relief can be granted.

## II. DISCUSSION

### *Motion to Dismiss Standard*

A district court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Powell v. United States, 945 F.2d 374, 375 (11th Cir. 1991). In evaluating a motion to dismiss for failure to state a claim, a court must accept as true all allegations contained in the complaint and must view the complaint in the light most favorable to the plaintiff. Peterson v. Atlanta Housing Auth., 998 F.2d 904, 912 (11th Cir.

4

1993).  However, while the Court must weigh every inference in plaintiff's favor, "conclusory allegations and unwarranted deductions of fact" may not be taken as true. Associated Home Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974).[3] The "threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." Quality Foods de Centro America, S.A. v. Latin America Agribusiness Dev. Corp., 711 F.2d 989, 995 (11th Cir. 1983).  Thus, a court can dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only when a plaintiff "can prove no set of facts which would entitle him to relief." Martinez v. American Airlines, Inc., 74 F.3d 247, 248 (11th Cir. 1996).

Defendant also attacks the Court's subject matter jurisdiction in this case. Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint on the ground that the Court lacks subject matter jurisdiction. A motion under Rule 12(b)(1) can take either of two forms. A "facial attack" on the complaint requires the court to determine whether the plaintiff alleges a sufficient basis of subject matter jurisdiction. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.1990) (citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)). For purposes of a "facial attack," the allegations in the complaint are taken as true. Lawrence, 919

---

[3]Decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

F.2d at 1529. In contrast, a "factual attack" on the complaint challenges the court's subject matter jurisdiction "in fact." Id. In evaluating a factual attack, the Court may consider matters outside the pleadings, and "no presumptive truthfulness attaches to plaintiff's allegations." Id. Furthermore, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

### *Defendant's Motion to Dismiss*

For the reasons set forth below, the Court finds that the Eleventh Amendment bars Plaintiffs' claims and further finds that Plaintiffs have failed to state a claim for constitutional violations in connection with their efforts to obtain relief through the CSF. Having reached these conclusions, the Court need not address Defendant's ripeness argument in order to resolve the motion to dismiss.

### Sovereign Immunity

Defendant argues that all of Plaintiffs' claims are barred by the Eleventh Amendment of the United States Constitution. That Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

6

"[T]he Eleventh Amendment's ultimate guarantee is that nonconsenting states may not be sued by private individuals in federal court." McClendon v. Georgia Dep't. of Cmty. Health, 261 F.3d 1252, 1256 (11th Cir. 2001). This immunity applies "even when a state is not named as a party of record, if for all practical purposes the action is against the state. Schopler v. Bliss, 903 F.3d 1373, 1378 (11th Cir. 1990). Therefore, the Amendment "extends to state agencies and other arms of the state, but it does not reach lawsuits against municipalities and other discreet political subdivisions that are sufficiently independent from the state." Id.

The Supreme Court of Florida integrated the formerly voluntary Florida State Bar in 1949, thereby making the state bar "a body created by and existing under the authority of this Court and as an official arm of this Court." Dacey v. the Florida Bar, 414 F.2d 195, 196 (5th Cir. 1969). Later, in 1962, the Florida Supreme Court held that "[t]he Florida Bar, a body created by and existing as an agency of the Judicial branch of government under the constitutional powers of this Court, is a legal entity . . ." Id. at 197 (internal citations and quotations omitted). As such, the Eleventh Circuit holds that "[t]he Eleventh Amendment prohibits actions against state courts and state bars." Kaimowitz v. The Florida Bar, 996 F.2d 1151, 1155 (11th Cir. 1993); see also Geer v. Harkness, 134 Fed. Appx. 312, 314 (11th Cir. 2005) (relying on Kaimowitz in noting that "[w]e have held that the Florida Bar is a state agency."); Otworth v. The Florida Bar, 71 F. Supp.2d 1209, 1221 (M.D. Fla. 1999) ("[T]he

7

Eleventh Circuit has expressly held that the Florida Bar is entitled to Eleventh Amendment immunity.").

Plaintiffs concede that the Bar is an agency of the state and is therefore afforded certain protections by the Eleventh Amendment, but they contend that the Eleventh Amendment does not foreclose the specific relief sought in this case. Plaintiffs claim to seek only prospective injunctive relief for ongoing constitutional violations and no longer seek, contrary to the allegations in the complaint, any monetary relief; therefore, submit Plaintiffs, sovereign immunity is inapplicable to this case.[4]

It is clear that "the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996) (relying on Cory v. White, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is

---

[4] So the record is clear, Plaintiffs argue in their brief that any monetary judgment would come from the CSF that is funded by members of the Bar, not the State; therefore, they are not seeking a retrospective award requiring payment from state funds. But see, Seminole Tribe, 517 U.S. at 58 ("The Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury.") (internal citations and quotations omitted). At oral argument, however, Plaintiffs somewhat revised their position and represented that they now waive all monetary claims and seek only due process and equal protection in the processing of their claims. At the same time, however, counsel stated at the conclusion of the hearing that the prospective relief Plaintiffs seek is payment on their claims. (Transcript of Nov. 13, 2006 hearing at 49). Semantics notwithstanding, and for the reasons stated herein, whether they seek monetary or prospective injunctive relief, the Eleventh Amendment bars their claims against the State Bar of Florida.

sought.")).  However, it is also well-settled that pursuant to the <u>Ex Parte Young</u> doctrine, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a citizen may seek prospective injunctive relief against a *state officer* in order to end an ongoing violation of federal law.  <u>Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health and Rehabilitative Services</u>, 225 F.3d 1208, 1219 (11th Cir. 2000) (emphasis supplied); <u>see also</u>, <u>Scott v. Taylor</u>, 405 F.3d 1251, 1255 (11th Cir 2005) (<u>Ex Parte Young</u> "held that official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment.").

In the present case, however, Plaintiffs are not seeking relief from a state official, but rather from an arm of the state and the <u>Ex Parte Young</u> exception is, therefore, inapplicable.  Plaintiffs nevertheless argue that state agencies may be sued for prospective injunctive relief and rely on <u>Louisiana St. Bd. of Ed. v. Baker</u>, 339 F.2d 911, 912 (5th Cir. 1964).  In that school desegregation case, the Fifth Circuit held that state agencies are not immune from suits to "enjoin it from enforcing an unconstitutional statute which requires segregation of the races and that the individual members of the [school] Board need not be joined." <u>Id.</u>  While the Court acknowledges the holding in that case, it finds, first, that its applicability is limited to that particular holding regarding racial segregation, and, second, that subsequent controlling authority makes it abundantly clear that the Eleventh Amendment

9

prohibits suits against state agencies, even those that seek only prospective injunctive relief. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought."). Therefore, unless the State has waived its immunity, or a valid override of immunity exists through an act of Congress, the Eleventh Amendment bars suits against the State and its agencies, regardless of the type of relief sought.[5] See Will v. Michigan Dept. State Police, 491 U.S. 58, 66 (1989) (explaining in the context of § 1983 actions that the Eleventh Amendment bars suits against the State for alleged deprivations of civil rights unless the State has waived its immunity); Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989) (holding that the Eleventh Amendment prohibits suits against a State, regardless of whether Plaintiffs seek monetary damages or prospective injunctive relief). Pursuant to this controlling case law, Plaintiffs' claims against the Florida Bar are barred by the Eleventh Amendment.

The Court further acknowledges that Plaintiffs argue for the exercise of supplemental jurisdiction over the state constitutional claims pursuant to 28 U.S.C.

_____

[5] Plaintiffs do not assert either that the State has waived its immunity, or that a valid congressional override of immunity exists in this situation. Additionally, evidence that a state has waived immunity in its own courts is not sufficient to establish waiver of Eleventh Amendment immunity from suit in federal court. Florida Dept. of Health and Rehab. Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 150 (1981).

§ 1367(a). The Eleventh Amendment, however, applies to all claims against the State, including state law claims asserted in federal court. The Supreme Court explains that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." Pennhurst, 465 U.S. at 121; see also, Doe v. Moore, 410 F.3d 1337, 1349 (11th Cir. 2005) ("The Eleventh Amendment acts as a jurisdictional bar for any such suit against the state, even under supplemental jurisdiction."); Laube v. Campbell, 215 F.R.D. 655, 659 (M.D. Ala. 2003) (Relying on Pennhurst in recognizing that Eleventh Amendment immunity extends to claims under both federal and state law).[6]

---

[6] At the hearing, Plaintiffs sought permission to amend the complaint should the Court disagree with their arguments concerning sovereign immunity. The request is denied for two reasons. First, Plaintiffs clearly seek monetary relief, despite their repeated assertion that such monetary relief is actually prospective injunctive relief. Nowhere in the complaint or during oral argument do Plaintiffs seek a form of relief that remotely resembles prospective injunctive relief. Plaintiffs are challenging the denial of their claims and seek a court order forcing Defendant to pay the claims. Second, an amendment based on the allegations in this case would be futile because, as set forth below, the Court finds as a matter of law that Plaintiffs fail to state a cognizable constitutional claim.

11

Substantive Constitutional Claims[7]

The Court also concludes, as a matter of law, that Plaintiffs fail to state either a due process or equal protection claim.

The due process clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs allege that Defendant violated their due process rights by arbitrarily denying their claims, thereby depriving them of property without due process of law.[8] To prevail on this claim, Plaintiffs must establish: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." Bank of Jackson Cty. v. Cherry, 980 F.2d 1362, 1366

---

[7] Although the parties do not address the issue, the Court notes for the record that the due process and equal protection clauses of the Florida Constitution afford the same protections and limitations as that of the United States Constitution. See 75 Acres, LLC v. Miami-Dade Cty., Fla., 338 F.3d 1288, 1298 n. 13 (11th Cir. 2003); Modern, Inc. v. Florida Dept. of Transp., 381 F.Supp.2d 1331, 1346 (M.D. Fla. 2004) ("Under the Florida Constitution, the equal protection and due process standards are the same as the federal standards.") (relying on Duncan v. Moore, 754 So.2d 708, 712 (Fla. 2000)); Florida Canners Ass'n. v. State Dept. of Citrus, 371 So.2d 503, 513 (Fla. Dist. Ct. App. 1979) ("We consider the federal and Florida constitutional guarantees as imposing the same standard and will discuss them as one."), affirmed, 406 So.2d 1079 (Fla. 1981). Therefore, the resolution of the federal constitutional claims applies equally to the state constitutional claims.

[8] Defendant vigorously disputes that it denied Plaintiffs' claims. Instead, Defendant argues that Plaintiffs have not properly applied for benefits from the CSF because they have never submitted the proper forms with the proper documentation. Defendant further represents that no decision has been made on this matter by any final decision maker, including a Designated Reviewer or the full Board of Governors. Any potential claims, submits Defendant, are being held in abeyance until the proper information is provided. For purposes of resolving the pending motion to dismiss, however, the Court assumes that the claims were in fact denied as alleged.

(1th Cir. 1993). Failing to establish any one of these elements is fatal to Plaintiffs' claim. Id.

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). In order "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. There is no entitlement to the monetary benefits of the Clients' Security Fund. The Rules Regulating the Florida Bar addressing the CSF state in relevant part:

> **a) Payment is Discretionary.** If, in the judgment of the board or the committee, as the case may be, a reimbursable loss has been sustained by an applicant and the circumstances warrant relief, then, after taking into consideration the resources of the fund and the priority to be assigned to such application, the committee or the board may, in the exercise of their respective discretion, as a matter of grace and not of right, grant monetary relief within the amount of their respective authority as set forth in rule 7-2.2(b).

> **(c) No Right to Payment.** No applicant shall have any right, legal or equitable, contractual or statutory, to a grant of monetary relief from the fund, and neither a determination by the board to pay any portion or all of any claim, nor partial payment, shall vest any such right in the applicant.

R. Regulating Fla. Bar 7-2.3 (a) and (c).

A Florida appellate court rejecting an equal protection and due process challenge to the discretionary nature of the CSF held that "[r]eimbursement to claimants from the Clients' Security Fund are a matter of grace, not of right or obligation. The decision to pay a claimant and the decision to sue on an assignment are withing the sole and unfettered discretion of the Bar." Southeast First National Bank of Miami v. The Florida Bar, 389 So.2d 1222, 1223-24 (Fla. Dist. Ct. App. 1980).[9] Both the rules governing the CSF and the holding of the Florida Court that considered those rules make it clear that Plaintiffs do not have a protectable property interest in this unfettered, discretionary and charitable benefit; therefore, they are not entitled to procedural due process and the claim is dismissed with prejudice. See also, Tefel v. Reno, 180 F.3d 1286, 1300 (11th Cir. 1999) (explaining in the context of due process rights that "expectation does not equate with liberty or property, and a constitutionally protected interest cannot arise from relief that the executive exercises unfettered discretion to award.") (relying on Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981) ("[A] constitutional entitlement cannot be created as if by estoppel - merely because a wholly and expressly discretionary state privilege has been granted generously in the past.")).[10]

---

[9] The Court recognizes that the Florida appellate court addressed the due process and equal protection claims together. Pursuant to binding authority, the Court analyzes the constitutional claims in this case separately.

[10] Plaintiffs rely on Saleeby v. The State Bar of California, 702 P.2d 525, 535 (Ca. 1985), wherein the California Supreme Court held that claimants to the California client security fund were entitled to certain procedural due process protections. That holding, however, was

14

The equal protection clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court explains that this provision does not create any substantive rights, but "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997). Plaintiffs allege that when Defendant denied their claims, it treated them differently from other similarly situated victims of attorney malfeasance. Specifically, Plaintiffs contend that Defendant purported to deny their claims because they did not attempt to recover their losses from Robles directly. However, allege Plaintiffs, Defendant regularly paid victims from the CSF and then pursued reimbursement from the offending attorney or other relevant entity consistent with its subrogation rights; therefore, it could pay these claims and then pursue reimbursement from Robles.[11]

Unlike a procedural due process claim, "the rule of equal treatment does not depend on the existence of an underlying property right," and therefore the claim "cannot be dismissed for lack of a protectable property interest." Haves v. City of

---

based on state due process grounds, not federal, and subsequent cases recognize that the Saleeby court permitted a state constitutional claim "where no similar claim could have been made under the federal analytical approach." Ryan v. California Interscholastic Federation-San Diego Section, 114 Cal. Rptr.2d 798, 815 (Cal Ct. App. 2001).

[11] In support of this allegation, Plaintiffs cite to two Florida cases (dated 1981 and 1986) in which Defendant asserted claims under subrogation rights.

Miami, 52 F.3d 918, 921 (11th Cir. 1995). Instead, "[a]n equal protection claim revolves around whether similarly situated persons are treated differently." Reserve Ltd. v. Town of Longboat Key, 17 F.3d 1374, 1381 (11th Cir. 1994). The analysis of Plaintiffs' equal protection claim requires an allegation that there are other victims of attorney malfeasance similarly situated in all relevant respects to Plaintiffs. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006) (finding that in order to be similarly situated, the comparators must be "*prima facie* identical in all relevant respects."). For the reasons stated below, the Court finds that Plaintiffs fail to allege such similarity.

In response to Defendant's motion to dismiss, Plaintiffs argue that they have stated an equal protection claim because Defendant did not explain the real reason for denying their claims (i.e. that they failed to file their claims on the prescribed forms or provide the required information) until two years after the initial rejection of their claims; therefore, Defendant's initial reason for rejecting the claim is "bogus" and Defendant does not ordinarily render decisions for "bogus" reasons, or make claimants wait for two years to discover the real reason that the claims were denied.

Plaintiffs' arguments are misplaced. The issue is not whether Defendant has provided inconsistent reasons for denying Plaintiffs' claims, or handled their claims with undue delay. Plaintiffs' complaint alleges an equal protection violation because their claims were allegedly denied while the claims of other similarly situated

16

individuals were granted. Based on this allegation, the issue for the Court is whether Plaintiffs allege that they have been treated differently from others who are similarly situated in all relevant respects. They have not. Plaintiffs have not alleged that other clients obtained (or even attempted to obtain) funds from the CSF as a class of claimants who: (1) did not submit the proper forms with the required information; (2) submitted the purported claims *via* a letter from a lawyer who did not actually represent all of the purported members of the class; (3) sought collective relief that would potentially exhaust the fund; and (4) sought a special assessment of members of the Bar.[12] Absent allegations of different treatment of similarly situated clients, Plaintiffs fail to state a claim for an equal protection violation, and the claim is dismissed with prejudice.[13]

## CONCLUSION

For all of the reasons set forth above, Defendant's Motion to Dismiss is

---

[12] For the purpose of resolving the pending motion, the Court accepts as true Plaintiffs' allegation that the CSF has paid victims and then pursued reimbursement of those payments from the offending attorney pursuant to subrogation rights.

[13] Plaintiffs' equal protection claim is based on the allegation that they have been treated differently from others who are similarly situated. Based on the pleadings in this case and Plaintiffs' representations at oral argument, however, it is abundantly clear to the Court that Plaintiff cannot allege the existence of a class of people similarly situated in all relevant respects who were treated different; therefore, the equal protection claim is dismissed with prejudice. Furthermore, even if such allegation was possible, the Court finds it highly unlikely that Defendant's actions, based on the facts as alleged, would not withstand a rational basis review on the merits.

17

GRANTED.  The Clerk is DIRECTED to terminate all pending submissions and to

CLOSE this case.


It is so ORDERED this 22 day of December, 2006.



Willis B. Hunt, Jr.
Judge, United States District Court
Northern District of Georgia
Sitting By Designation

18